UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HCDL HOLDINGS, LLC,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　　Case No: 6:17-cv-62-Orl-40TBS

TKCT MILFORD, LLC, ARTHUR
DIADAMO, PETER DIADAMO and JOE
AMODIO,

    Defendants.

## REPORT AND RECOMMENDATION

This matter comes before the Court on Plaintiff's Motion for Default Judgment (Doc. 35). Defendants have not opposed the motion. For the reasons that follow, I respectfully recommend that the motion be **granted**.

### I. Background

On January 13, 2017, Plaintiff HCDL Holdings, LLC ("HCDL") filed claims against TKCT, LLC d/b/a The Tilted Kit ("TKCT"), TKCT Milford, LLC d/b/a The Tilted Kilt ("TKCT Milford"), Arthur DiAdamo, Peter DiAdamo and Joe Amodio for breach of contract (Doc. 1). HCDL alleges that in December 2011, TKCT obtained financing from Rx Financial Corp. to equip its Tilted Kilt restaurant (Doc. 1, ¶12). In October 2013, a different entity - TKCT Milford – also obtained financing from Rx Financial Corp. to equip its Tilted Kilt restaurant (Id., ¶14). Copies of the financing agreements are attached to the complaint (Docs. 1-1 and 1-3). Rx Financial Corp. assigned all of its interest in both agreements to HCDL (Id., ¶16). The last time TKCT made a payment was on April 26, 2014, and the last time TKCT Milford made a payment was April 30, 2014 (Id., ¶¶17, 18). Count I is a breach

of contract claim against TKCT and its guarantors and Count II is a breach of contract claim against TKCT Milford and its guarantors.

On February 21, 2017, I recommended that the district judge sever Count I as improperly joined and dismiss it for lack of jurisdiction (Doc. 13 at 4-5). No objections were filed and on March 8, 2017, the district judge adopted my recommendation and dismissed Count I without prejudice (Doc. 14). TKCT was then terminated from the case (Docket).

On April 7, 2017, HCDL filed returns of service for Joe Amodio and Arthur DiAdamo (Docs. 15-16), and on April 10, 2017, I granted HCDL's motion for entry of clerk's default against these Defendants (Doc. 18). The Clerk entered defaults that same day (Docs. 19-20). On May 26, 2017, the Court determined, *inter alia*, that HCDL failed to properly effect service on remaining defendants TKCT Milford and Peter DiAdamo, and granted it fourteen days to show cause why the case should not be dismissed for failure to prosecute (Doc. 21). HCDL then filed (1) returns of service for Peter DiAdomo and TKCT Milford and (2) a response to the show cause order in which it explained the reason for delay (Docs. 22-24). The Court discharged the show cause order on June 13, 2017 and the Clerk entered defaults against Peter DiAdomo and TKCT Milford the next day (Docs. 28-29).

On June 16, 2017, I directed HCDL to provide the Court with case law concerning the sufficiency of service of process on the two defendants (Doc. 30). Based on HCDL's response (Docs. 31-32), on July 24, 2017, I determined that service was proper and discharged the show cause order (Doc. 33). On August 28, 2017, the Court ordered HCDL to show cause why the case should not be dismissed for its failure to apply for a default judgment against TKCT Milford, Arthur DiAdamo, Peter DiAdamo, and Joe Amodio (Doc. 34). HCDL filed the instant motion for default judgment on August 29, 2017

(Doc. 35). No response or objection to the motion has been filed and the time within to do so has expired.

II. Discussion

A. Entry of Defaults

As an initial matter, I find that the entry of defaults by the Clerk was proper. Court clerks are required to enter a defendant's default "[w]hen service of process is properly effected, but the served party fails to respond in a timely manner…" Kelly v. Florida, 233 F. App'x. 883, 885 (11th Cir. 2007) (citing FED. R. CIV. P. 55(a)).

1. TKCT Milford

I have already concluded that HCDL properly served TKCT Milford (Doc. 33) and incorporate that analysis here by reference.

2. Individual Defendants

Federal Rule of Civil Procedure 4(e) provides that an individual may be served by giving a copy of the summons and complaint to the individual personally; giving a copy of the summons and complaint to an age-appropriate person who lives at the individual's "dwelling or usual place of abode;" serving a copy on the person's agent "authorized by appointment or by law" to receive process; or by a manner permitted under the laws of the state in which the federal district court is located for an action brought in a court of jurisdiction in that state or in the state wherein service is made. FED. R. CIV. P. 4(e).

On July 24, 2017, I found that Peter DiAdamo was properly served (Doc. 33) and I incorporate that analysis here by reference.

Arthur DiAdamo was personally served at his home: 138 Townsend Ave., New Haven, CT 06109 on February 4, 2017 (Doc. 15). Joe Amodio was personally served at his home: 9560 NW 39th Court, Coral Springs, FL 33065 one month later on March 4, 2017 (Doc. 16 at 1). Individual service on these defendants complies with the federal

rules (FED. R. CIV. P. 4(e)); the rules of Florida, which is where this Court sits and where Joe Amodio was served (FLA. STAT. § 48.031); and the rules of Connecticut, where Arthur DiAdamo was served (CONN. GEN. STAT. § 52-57(a)).

Pursuant to Federal Rule of Civil Procedure 12, these Defendants were required to file responses by February 25, 2017 and March 25, 2017, respectively. FED. R. CIV. P. 12(a)(1)(A)(i). Neither Defendant has responded to HCDL's cause of action and the time within to do so has expired. Therefore, I find that default was properly entered.

### B. Entry of Default Judgment

A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default judgment. Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).[1]

A court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default judgment. Id. In defaulting, a defendant "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." Id. "The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. In short, despite occasional statements to the contrary, a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." Id. (footnote omitted).

If the facts in the complaint are sufficient to establish liability, then the court must conduct an inquiry to ascertain the amount of damages. See Adolph Coors Co. v.

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

Movement Against Racism & the Klan, 777 F.2d 1538, 1543-44 (11th Cir. 1985). "Damages may be awarded only if the record adequately reflects the basis for the award via a hearing or a demonstration of detailed affidavits establishing the necessary facts." Id. at 1544 (quoting United Artists Corp. v. Freeman, 605 F.2d 854 (5th Cir. 1979) (per curiam)).

C. Well-Pleaded Allegations

To sustain an action for breach of contract under Florida law, a plaintiff must establish the following elements: "(1) a valid contract, (2) a material breach, and (3) damages." Havens v. Coast Florida, P.A., 117 So. 3d 1179, 1181 (Fla. 2d DCA 2013); see Limu Co., LLC v. Burling, No. 6:12-cv-347-Orl-TBS, 2013 WL 3462327, at *5 (M.D. Fla. July 9, 2013) (citing Vega v. T-Mobile USA, Inc. 564 F.3d 1256, 1272 (11th Cir. 2009)). "[G]uaranty contracts are governed by traditional principles of contract formation," including the requirements of mutual assent and adequate consideration. Canada v. Yak Am., No. 12-22143-CIV, 2012 WL 4025745, at *2 (S.D. Fla. Sept. 12, 2012) (citing 38 Am. Jur. 2d Guaranty § 53 (1968). It is not necessary that the guarantor obtain personal benefit from the contract; rather "a promise based on consideration to benefit a third person constitutes sufficient consideration to bind the guarantor." Bank of Am., N.A. v. Dello Russo, Case No. 6:11-cv-734-Orl-22GJK, 2012 WL 12549681, at *8 (M.D. Fla. June 26, 2012).

The well-pleaded allegations of fact in the complaint (and attached exhibits)[2] allege that on October 20, 2013, TKCT Milford financed equipment for its Tilted Kilt restaurant from Rx Financial Corp. (Doc. 1 at, ¶ 14). In exchange for Rx Financial financing more than $85,000 worth of restaurant equipment, TKCT Milford agreed to

---

[2] All exhibits attached to the complaint are adopted into the pleading by reference. See FED. R. CIV, P. 10(c); see also Ahern v. Fidelity Nat. Title Ins. Co., 664 F. Supp. 2d 1224, 1226 (M.D. Fla. 2009).

make 36 scheduled monthly payments of $3,210026 (Doc. 1-3; Doc. 1-4 at 3). Arthur DiAdamo, Peter DiAdamo, and Joe Amodio each signed a personal guaranty for the financing (Doc. 1 at ¶ 15; Doc. 1-4). Rx Financial Corp. assigned all of its interest in the TKCT Milford financing agreement to HCDL (Doc. 1 at ¶ 16). April 30, 2014 was the last time TKCT Milford made a payment on the loan pursuant to the agreement (Id. at ¶ 18). Since April, 2014, TKCT Milford has fail to make any additional payments under the agreement (Id.). By virtue of the default, Defendants have admitted HCDL's well-pled allegations. Nishimatsu, 515 F.2d at 1206. Therefore, I conclude that Plaintiff has adequately made its claims for breach of contract.

D. Damages

In the motion, HCDL explains that it is owed a total of $129,542.62, which is itemized as follows:

| | |
|---|---|
| 36 payments of $3,210.26 | $115,569.39 |
| 39 late fees of $321.02 | $12,519.78 |
| Advance Payment Due | $6,420.52 |
| Residual Payment | $1.00 |
| Subtotal: | $135,714.66 |
| Subtract payments made: Advance Payment made | $6,420.52 |
| Monthly payments made (2) | $6,420.52 |
| Total Due: | $122,873.62 |

(Doc. 35 at 2, ¶ 12). The amounts requested are substantiated by the affidavit of Dana Broadway, HCDL's sole member (Doc. 35-1 at 2-3, at ¶ 12) and the payment record spreadsheet attached also attached to the motion (Id. at 5-6).

C. Costs

HCDL seeks $1,204.00 in costs consisting of the filing fee and fees for service of process (Id. at 7-8). Under the Federal Rules of Civil Procedure, a prevailing party is

generally entitled to an award of all taxable costs incurred in litigating the dispute. See FED. R. CIV. P. 54(d)(1). I find the fees sought are recoverable under 28 U.S.C. § 1920.

D. Attorney's Fees

The financing agreement sued on provides: "Debtor shall pay Creditor its costs and expenses not offset as provide in paragraph 16, including repossession and attorneys' fees and court costs, incurred by Creditor in enforcing this Agreement" (Doc. 1-3); and the guarantor Defendants have promised to pay "all obligations with respect to the Liabilities or any security therefore, with interest and other charges, when due" (Doc. 1-4).

HCDL seeks an award of $6,669.00 in attorney and paralegal fees (Doc. 35-3). This amount is based on 16.2 hours of attorney time at $400.00 per hour and 3.9 hours of paralegal time at the rate of $110.00 per hour (Id.). The application for fees is supported by the affidavit of HCDL's attorney, and a copy of his firm's time ledger (Id.).

The Court utilizes the lodestar approach as the first step in calculating a reasonable fee for counsel's services. Hensley v. Eckerhart, 461U.S. 424 (1983); Norman v. Hous. Auth. of the City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988); FTC v. Life Mngm't Servs., Case No. 6:16-cv-982-Orl-41TBS, 2016 WL 7013517, at *2 (M.D. Fla. Oct. 14, 2016). "[T]he starting point in any determination for an objective estimate of the value of a lawyer's services is to multiply hours reasonably expended by a reasonable hourly rate." Norman, 836 F.2d at 1299. "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Henns v. Mony Life Ins. Co. of Am., Case No. 5:11-cv-55-Oc-37TBS, 2012 WL 1599871, at *3 (M.D. Fla. April 13, 2012).

"[T]he lodestar as calculated in Hensley presumptively includes all of the twelve factors derived from the ABA Code of Professional Responsibility DR 2–106 (1980), and adopted in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974),

except on rare occasions the factor of results obtained and, perhaps, enhancement for contingency." Norman, 836 F.2d at 1299. The Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson, 488 F.2d at 717-19 (abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989)).

Once the Court has determined the lodestar, it may adjust the amount upward or downward based upon a number of factors including the results obtained. Norman, 836 F.2d at 1302. "Ultimately, the computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.'" Villano v. City of Boynton Beach, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting Hensley, 461 U.S. at 436). The Court is "an expert on the question [of attorneys' fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." Norman, 836 F.2d 1303 (quoting Campbell v. Green, 112 F.2d 143, 144 (5th Cir. 1940)).

The amount of time billed is viewed as "the most useful starting point for determining the amount of a reasonable fee." Hensley, 461 U.S. at 433. The applicant should present records detailing the amount of work performed. Once the party seeking fees produces adequate billing records, the opponent "has the burden of pointing out with specificity which hours should be deducted." Rynd v. Nationwide Mutual Fire Ins. Co., No. 8:09-cv-1556-T-27TGW, 2012 WL 939387, at * 3 (M.D. Fla. Jan. 25, 2012) (quoting

Centex-Rooney Const. Co., Inc. v. Martin Cnty, 725 So. 2d 1255, 1259 (Fla. 4th DCA 1999)).

Here, I find, particularly in light of the absence of opposition, that the hours and hourly rates claimed are reasonable, and I respectfully recommend that the fees sought be awarded to HCDL.

### III. Recommendation

Upon consideration of the foregoing, I respectfully recommend that the district judge **GRANT** HCDL's Motion for Default Judgment (Doc. 35) and direct the Clerk to **ENTER** judgement for HCDL and against Defendants TKCT Milford, Peter DiAdamo, Arthur DiAdamo, and Joe Amodio, jointly and severally, in the amount of $130,746.62.

### IV. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida on September 21, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding District Court Judge
    Counsel of Record
    Unrepresented Parties